# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZIA VANG,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | Case No.  1:21-cv-00488-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 17, 23, 24) |

## I.

## INTRODUCTION

Plaintiff Zia Vang ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Social Security benefits pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied.

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 7, 10, 11, 12, 19.)

1

**II.**

2

**BACKGROUND**[2]

3      On June 19, 2018, Plaintiff filed an application for Supplemental Security Income ("SSI")

4  under Title XVI, alleging disability beginning August 10, 2017.[3]  (Admin. Rec. ("AR") 260–66,

5  ECF No. 13-1.)

6      Plaintiff's claim was initially denied on October 8, 2018, and denied upon reconsideration

7  on January 7, 2019.  (AR 126–30, 134–38.)  On July 16, 2020, Plaintiff, represented by counsel,[4]

8  appeared via telephonic conference for an administrative hearing before the Administrative Law

9  Judge Shane McGovern (the "ALJ").  (AR 50–75.)  Vocational expert ("VE") Cassie Mills also

10  testified at the hearing.  On August 10, 2020, the ALJ issued a decision denying benefits.  (AR

11  17–40.)  On September 14, 2020, the Appeals Council denied Plaintiff's request for review,

12  making the ALJ's decision the final decision of the Commissioner.  (AR 6–11.)

13      Plaintiff initiated this action in federal court on March 23, 2021, and seeks judicial review

14  of the denial of her application for benefits.  (ECF No. 1.)  The Commissioner lodged the

15  administrative record on March 18, 2022.  (ECF No. 13.)  On July 1, 2022, Plaintiff filed an

16  opening brief.  (ECF No. 17.)  On October 14, 2022, Defendant filed an opposition to Plaintiff's

17  brief.  (ECF No. 23.)  On October 31, 2022, Plaintiff filed a reply.  (ECF No. 24.)  The matter is

18  deemed submitted.

19  ///

20  ///

21  ///

22

23  [2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the

24  Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

25  [3] While Plaintiff's complete medical history (*i.e.*, records of a claimant's medical sources covering at least the 12

26  months preceding the month in which an application is filed) must be considered for purposes of her application, 20 C.F.R. § 416.912, the Court notes that SSI benefits are not payable prior to the month following the month in which the application was filed, 20 C.F.R. § 416.335, and therefore the ALJ's disability determination is whether Plaintiff

27  was under a disability as of the date the application was filed.

28  [4] Plaintiff was represented by attorney Jonathan O. Pena during the administrative proceedings.  Plaintiff continues to be represented by Mr. Pena's law firm in the instant matter.  (See AR 20; ECF No. 17.)

**III.**

**LEGAL STANDARD**

**A.     The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[6] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

---

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[6] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[7]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

///

---

[7] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1

**B.      Standard of Review**

2      Congress has provided that an individual may obtain judicial review of any final decision

3   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

4   determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

5   the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

6   Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

7   the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

8   405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

9   evidence which, considering the record as a whole, a reasonable person might accept as adequate

10   to support a conclusion."   Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002)

11   (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

12   Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

13   the deferential clearly-erroneous standard).   "[T]he threshold for such evidentiary sufficiency is

14   not high."   Biestek, 139 S. Ct. at 1154.   Rather, "[s]ubstantial evidence means more than a

15   scintilla, but less than a preponderance; it is an extremely deferential standard."   Thomas v.

16   CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

17   citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

18   ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

19   454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally

20   falls upon the party attacking the agency's determination."  Shineski v. Sanders, 556 U.S. 396,

21   409 (2009).

22      Finally, "a reviewing court must consider the entire record as a whole and may not affirm

23   simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

24   1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

25   Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

26   review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

27   Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

28   this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

5

for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

As an initial matter, the ALJ noted Plaintiff's November 2005 final administrative decision and finding of nondisabilty, and considered whether there was any new and material evidence relating to the prior findings, or change in the law, regulations or rulings affecting the findings or the method for arriving at the findings so as to rebut the presumption of continuing nondisability. (AR 20–21 (citing Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988); Acquiescence Ruling 97-4(9)[8].) The ALJ determined there was a showing of changed circumstances and the presumption of continuing nondisability was rebutted, based on Plaintiff's evidence of new allegations of additional impairments that were not addressed in the prior administrative decision and changes in the age category. (AR 21.)

Next, the ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, August 10, 2020 (AR 23–35):

At step one, the ALJ determined Plaintiff has not engaged in substantial gainful activity since June 19, 2018, the application date. (AR 23 (citing 20 C.F.R. §§ 416.912, 416.960(c)).)

At step two, the ALJ determined Plaintiff has the following severe impairments: degenerative disc disease of the spine, chronic kidney disease (stage I–II), hypertension, major depressive disorder with anxious distress, anhedonia, and psychotic features, posttraumatic stress disorder (PTSD), and generalized anxiety disorder. (Id. (citing 20 C.F.R. §§ 416.920(c), 416.920(c)).)

---

[8] The SSA's Acquiescence Ruling 97-4(9) applies to disability cases involving claimants who reside in the Ninth Circuit, and states, "When adjudicating the subsequent claim involving an unadjudicated period, adjudicators will apply a presumption of continuing non-disability and determine that the claimant is not disabled with respect to that period, unless the claimant rebuts the presumption. A claimant may rebut the presumption by showing a 'changed circumstance' affecting the issue of disability with respect to the (subsequent) unadjudicated period, e.g., a change in the claimant's age category under 20 CFR 426.963, an increase in the severity of the claimant's impairments, the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability."

The ALJ also noted Plaintiff was diagnosed with mild fatty infiltration of the liver without hepatic masses or intrahepatic ductal dilation and a noncalcified left lower lobe pulmonary nodule, but determined these impairments are non-severe.  (Id.)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 23–25 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).)

In reaching this decision, the ALJ considered Plaintiff's severe physical impairments under the listings, including Listing 1.04 (disorder of the spine) and 6.00 (genitourinary disorder, et al.).  However, the ALJ found no evidence of nerve toot compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising test; spinal arachnoiditis; or lumbar spinal stenosis resulting in pseudoclaudication with inability to ambulate effectively as required by Listing 1.04.  Further, the ALJ found no evidence that Plaintiff required hemodialysis or peritoneal dialysis; has undergone a kidney transplant; has reduced glomerular filtration combined with renal osteodystrophy, peripheral neuropathy, fluid overload syndrome, or anorexia with weight loss; or had any recurrent hospitalizations during a 12-month period.  (AR 23–24.)

The ALJ also considered Plaintiff's mental impairments, and determined they did not meet or medically equal the criteria of Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.15 (trauma and stressor-related disorders).  More specifically, the ALJ determined Plaintiff does not satisfy the paragraph B criteria because her limitations in the four broad functional areas are all of moderate severity. (AR 24–25.)  The ALJ also considered the paragraph C criteria and determined the record does not establish that Plaintiff's mental disorder(s) are "serious and persistent" to the extent that Plaintiff has minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life despite effective treatment. (AR 25.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform

**medium work as defined in 20 CFR 416.967(c) except the**

7

> **claimant is limited to work that is uncomplicated enough that it can be learned within 30 days. She is unable to perform work that involves hourly quotas or the use of conveyer belts. The claimant is able to tolerate occasional, simple workplace changes. The claimant is able to tolerate occasional interactions with coworkers, supervisors, and the public.**

(AR 25–32 (citing 20 C.F.R. § 416.929, and SSR 16-3p, <u>available at</u> 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (AR 32–33 (citing 20 C.F.R. § 416.965).)

At step five, the ALJ noted Plaintiff was born on July 4, 1961, and was 56 years old (which is defined as an individual of advanced age) on the date the application was filed; Plaintiff has a limited education; and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills.  (AR 33 (citing 20 C.F.R. §§ 416.963, 416.964; SSR 82-41; 20 C.F.R. Part 404, Subpart P, Appendix 2).) Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 416.969, 416.969(a)), such as:

- Hand packager (Dictionary of Occupational Titles ("DOT") 920.587-018), a medium, unskilled work position with a specific vocational preparation ("SVP") level of 2, and approximately 38,000 jobs in national economy;

- Cleaner position (DOT 599.687-030), a medium, unskilled work position with an SVP of 2, and approximately 4,000 jobs in national economy;

- Janitor (DOT 381.687-018), a medium, unskilled work position with an SVP of 2, and approximately 11,000 jobs in national economy; and

- Agricultural packer (DOT 920.687-134), a medium, unskilled work position with an SVP of 2, and approximately 9,000 jobs in national economy.

(AR 33–34.)   With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT and, with respect to the specified RFC limitations, the VE's testimony

1    was based on her experience.  (AR 34.)

2        Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social

3    Security Act, since June 19, 2018, the date the application was filed.  (AR 35 (citing 20 C.F.R. §

4    416.920(g)).)

5                                            **V.**

6                                      **DISCUSSION**

7        On appeal, Plaintiff asserts three challenges to the ALJ's decision: (1) substantial evidence

8    does not support the ALJ's finding that Plaintiff has a "limited education" or that she can

9    communicate in English; (2) the ALJ committed harmful error by failing to identify and resolve

10   an inconsistency between the DOT and VE testimony per SSR 00-4p; and (3) the MRFC does not

11   reflect substantial evidence of record.  (ECF No. 17 at 2.)  The Court shall address each argument

12   in turn.

13       **A.    Plaintiff's "Limited Education"**

14       As noted, at step five, the ALJ must consider Plaintiff's RFC, age, education, and work

15   experience to determine whether there are a significant number of jobs in the national economy

16   that Plaintiff can perform.  20 C.F.R. § 416.912(g); Lounsbury, 468 F.3d at 1114.  The ALJ

17   considered these factors and determined there are a significant number of jobs in the national

18   economy that Plaintiff can perform.   (AR 34.)   Plaintiff challenges the ALJ's step five

19   determination on the basis that the ALJ's finding that Plaintiff has a "limited education," rather

20   than being "illiterate," is not supported by substantial evidence.  (ECF No. 17 at 9–11.)  This

21   argument is unavailing.

22       As an initial matter, as correctly noted by Defendant, the regulation concerning education

23   has been amended to eliminate any reference to the ability to speak, read and understand

24   English.  See Valdizon v. Kijakazi, No. 1:20-cv-01271-SKO, 2022 WL 378656 (E.D. Cal. Feb. 8,

25   2022) (noting that 20 C.F.R. § 404.1564 was amended to eliminate "inability to communicate in

26   English" as an education category.)  This was based on an agency finding that English language

27   facility "is no longer a useful indicator of an individual's educational attainment or of the

28   vocational impact of an individual's education because of changes in the national workforce since

we adopted the current rule more than 40 years ago." 85 Fed. Reg. 10,586, 10,601 (Feb. 25, 2020). The effective date of the amendment was April 27, 2020, and the agency determined that the amendment would apply "to claims that are pending on or after the effective date." 2020 WL 1083309, No. SSA-2017-0046 (Mar. 9, 2020). The ALJ rendered a decision on August 10, 2020, more than three months after the effective date of the amendment. Thus, the amendment is applicable to this instant case. Accordingly, even if Plaintiff was deemed illiterate, she has not shown that the ALJ's decision fails to comply with the regulations applicable at the time of the decision. Plaintiff has cited no authority requiring an ALJ to address English proficiency limitations in an RFC assessment or a VE hypothetical under the current regulatory scheme. Indeed, recent agency guidance suggests that such a consideration would be inappropriate. See SSR 20-01p, available at 2020 WL 1285114 (Mar. 9 2020) ("When determining the appropriate education category, we will not consider whether an individual attained his or her education in another country or whether the individual lacks English language proficiency.").

Furthermore, the ALJ's finding that Plaintiff has a "limited education" is supported by substantial evidence. Plaintiff reported to Dr. Livesay that she completed the equivalent of the tenth grade prior to immigrating to the United States, and she had two months of vocational skills training at First Street Adult School in Fresno, California. (AR 33, 434.) The regulations describe a "limited education" as an "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 416.964(b)(3). The regulations "generally consider that a 7th grade through the 11th grade level of formal education is a limited education." Id.

Plaintiff challenges the statement in Dr. Livesay's report that she completed the equivalent of a tenth-grade education as some sort of miscommunication or misunderstanding created due to her language barrier, and argues the ALJ improperly relied on the statement where Plaintiff also testified that she is unable to read or write, has no formal education, and that she had feelings of distress related to her language barrier and illiteracy problem. (ECF No. 17 at 10–12.) However,

in resolving the conflicting evidence regarding Plaintiff's education and literacy, Ford, 950 F.3d at 1149, the ALJ also considered Plaintiff's report that she could pay her bills sometimes, and evidence that she can interact well with medical professionals, is able to shop in stores, has a California driver's license and used to drive, and previously worked as a home health aide, which is a semi-skilled position with an SVP level of 3.  (AR 24–25, 32.)  See 20 C.F.R. §§ 416.964(a), (c) (even if a claimant does not have a formal education, the ALJ may evaluate her "formal or informal education" based on past work experience and the kinds of responsibilities she had when she was working, as well as daily activities, hobbies, the results of testing, community projects, and any other activities which might help the claimant to work).  The ALJ also noted Plaintiff "appeared motivated to make a case for disability by exaggerating compromise in functioning" during her consultative examination with Dr. Swanson and "was ultimately uncooperative" (AR 31), discussed other inconsistencies between Plaintiff's allegations and the record (AR 26–30), and ultimately reached an adverse credibility determination (AR 26–27), which Plaintiff has not challenged (thereby waiving this particular issue).  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review … issues which are argued specifically and distinctly in a party's opening brief.").  Thus, the ALJ properly determined credibility and resolved the conflicts in the record and determined Plaintiff has a limited education.  To the extent Plaintiff merely seeks to advance an alternative interpretation of the evidence, this is not a basis to disturb the ALJ's rational interpretation of the evidence.  Burch, 400 F.3d at 680–81 (citing Magallanes v. Bowen, 881 F.2d 747, 749 (9th Cir. 1989)) ("[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); Rollins v. Massanari, 261 F.3d 853 (9th Cir. 2001) ("It is true that Rollins' testimony was somewhat equivocal about how regularly she was able to keep up with all of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable one.  But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it.").  Accordingly, the Court finds the ALJ's finding that Plaintiff has a limited education is supported by substantial evidence in the record.

### B.       Inconsistency Between the DOT and VE Testimony

Relatedly,[9] Plaintiff argues the ALJ committed harmful error by failing to set forth any language limitations to the VE when presenting hypotheticals, specifically that Plaintiff was illiterate or unable to communicate in English.  Because the jobs identified by the VE require language levels 1 and 2, Plaintiff argues the ALJ failed to identify and resolve an inconsistency in the language requirements between the DOT and the VE testimony, in violation of SSR 00-4. (ECF No. 17 at 2, 12–15.)

### 1.       Legal Standard

At previously noted, at step five, the Commissioner must "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations."  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal quotations omitted).  Where the testimony of a VE is used, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy.  20 C.F.R. § 404.1566(b); see Burkhart v. Bowen, 856 F.2d 1335, 1340 n. 3 (9th Cir. 1988).  Hypothetical questions posed to the VE must set out all the limitations and restrictions of the particular claimant, as supported by the medical record. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

SSR 00-4p, available at 2000 WL 1898704 (Dec. 4, 2000), provides that where there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled.  SSR 00-4p, at *2.  The ALJ must inquire, on the record at the disability hearing, as to whether or not there is such consistency.  Id.; see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).  Further, the SSA notes neither the DOT nor the VE's evidence "automatically 'trumps' when there is a conflict"; rather, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than the DOT information.  SSR 00-4p, at *2.

---

[9] Indeed, Plaintiff appears, confusingly, to combine her first two arguments into a single subsection "A" in her reply briefing.  (See ECF No. 24 at 2–6.)

2.     Analysis

At the disability hearing, the ALJ presented a hypothetical question that mirrored the RFC determination; in response, the VE testified that Plaintiff could not perform her prior work but could, for example, perform jobs as a hand packager, cleaner position, janitor, and agricultural packer.  (AR 25, 70–71.)  Plaintiff argues two of the three jobs identified by the VE—cook helper and grocery packer—have a language level 1 requirement, and the job of janitor has a language level 2 requirement.[10]    Plaintiff argues that, because she is "illiterate" and has "no formal education," the ALJ was required to ask the VE how a person who is illiterate and has no formal education could perform these jobs.  (ECF No. 17 at 14.)

As to Plaintiff's argument that the ALJ failed to set forth language limitations to the VE, as addressed previously, the applicable revised regulations demonstrate a claimant's inability to communicate in English is not dispositive of her education where the ALJ may consider other factors such as past work experience, daily activities, vocational training, hobbies, and other informal experiences that may contribute to an ability to work.  20 C.F.R. §§ 416.964(a), (c). Further, the Court determined the ALJ's finding that Plaintiff had a "limited education" was based on substantial evidence in the record.  The ALJ also concluded Plaintiff has the ability to read some phrases and is not fully illiterate.  (AR 33.)  Again, this appears to be based on the finding that Plaintiff engaged in two months of vocational training, previously worked a semi-skilled job as a home health aide, and obtained a driver's license, as well as testimony elicited by the ALJ that Plaintiff wrote with her right hand (AR 59), used to "read everything" (AR 61), and understands every word of the Hmong language (id.).  Further, to the extent Plaintiff is merely rehashing her prior argument that the ALJ erred in determining she had a "limited education," Plaintiff's argument fails.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (rejecting a step five argument that "simply restates" arguments about medical evidence

---

[10] The Court notes Plaintiff's argument appears rife with errors from the outset.  First, Plaintiff purports to take issue with three of the jobs identified by the VE, but does not address the fourth job addressed by the VE; thus, she does not challenge all of the jobs under SSR 00-4p and has not established harmful error.  Second, the jobs discussed by Plaintiff—cook helper and grocery packer—were not the jobs identified by the VE.  Nor does Plaintiff address the jobs actually identified by the VE—hand packager, cleaner position, janitor, and agricultural packer; on this basis alone, her argument is unavailing.  Nonetheless, in the event some typographical error occurred in Plaintiff's briefing, the Court notes Plaintiff's arguments fail on the merits for the reasons discussed supra.

and testimony); Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (summarily rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above."); see also Embrey, 849 F.2d at 423 (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE). Based on the foregoing, Plaintiff's argument that the ALJ committed harmful error by failing to set forth any language limitations to the VE when presenting hypotheticals—specifically that Plaintiff was illiterate or unable to communicate in English—is unavailing.

Further, the Court does not find any apparent conflict between the DOT and the VE's testimony. The Ninth Circuit has stressed that an ALJ only need follow up on a potential conflict if it is "apparent or obvious":

> To begin with, it's important to keep in mind that the [DOT] refers to "occupations," not to specific jobs. "Occupation" is a broad term that includes "the collective description" of "numerous jobs" and lists "maximum requirements" of the jobs as "generally performed." SSR 00-4P, 2000 WL 1898704, at *2–3. Because of this definitional overlap, not all potential conflicts between an expert's job suitability recommendation and the [DOT's] listing of "maximum requirements" for an occupation will be apparent or obvious. And, to reiterate, an ALJ need only follow up on those that are.

Gutierrez v. Colvin, 844 F.3d 804, 807–08 (9th Cir. 2016). The court elaborated that "tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." Id. at 808. Thus, "[t]he requirement for an ALJ to ask follow up questions is fact-dependent." Id. In Gutierrez, for example, the court noted the DOT's definition of "cashier" specifies that a cashier may need to "reach frequently," and be able to read "adventure stories and comic books," write in "cursive," "interpret bar graphs," and follow "instructions for assembling model cars"; yet the court commented that, "[w]hile the ability to read, write, and follow assembly instructions may roughly correlate to the aptitude necessary to perform some cashiering jobs, those abilities aren't necessarily essential for most cashiers." Similarly, here, the Court is unpersuaded that the "frequency or necessity" of a task requiring, for example, a janitor to read and write in English is so likely and foreseeable that the ALJ was

1  obligated to ask follow up questions of the VE.  See id.  Indeed, Plaintiff's previous work as a
2  home aide, a semiskilled position which is categorized as a language level two job, demonstrates
3  her capacity to perform such jobs even without being required to read or write.

4      Furthermore, even if a conflict existed, the hearing transcript indicates the ALJ did resolve
5  any apparent conflict.  Importantly, the VE was aware of the specific limitations in the RFC when
6  she testified that a hypothetical person with Plaintiff's age, education, work background and RFC
7  could perform the four identified jobs.  (See AR 70–71.)  In compliance with SSR 00-4p, the ALJ
8  also asked the VE whether her testimony was consistent with the DOT.  (AR 73.)  In addition, the
9  VE testified that the positions she identified are jobs that could also be learned through visual
10 demonstration (rather than by written or spoken instruction).  (AR 72–73.)  As to these variations,
11 the VE testified that her testimony as to the identified jobs was made based on her professional
12 experience.  (AR 73.)  On this record, the Court finds the ALJ reasonably relied on the VE's
13 testimony.  See Massachi, 486 F.3d at 1152.

14     Plaintiff's argument that the ALJ improperly relied on Grid Rule 203.12 to opine that
15 literacy and education level would be irrelevant to the outcome of the decision (ECF No. 17 at
16 14) is also unavailing.  As previously noted, the ALJ may reach his step five determination
17 through use of either the grids or a VE's testimony.  20 C.F.R. § 404 Subpt. P, App. 2;
18 Lounsburry, 468 F.3d at 1114; Osenbrock, 240 F.3d at 1162.  Here, the ALJ referred to the grids
19 as a framework for decision making and relied on the VE's testimony.  This is consistent with the
20 requirements under 20 C.F.R. § 416.969a(d).

21     Finally, the Court notes that Plaintiff's attorney had an opportunity to challenge the VE's
22 findings with respect to Plaintiff's purported illiteracy limitations but did not do so.  (See AR 71–
23 72.)  Thus, the objection is deemed waived.  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir.
24 1999) (holding that, "at least when claimants are represented by counsel, they must raise all issues
25 and evidence at their administrative hearings in order to preserve them on appeal" and rejecting
26 brand new challenge based on VE testimony)); George v. Saul, 837 Fed. App'x 516, 517 (9th Cir.
27 2021).

28     Accordingly, the Court does not see any conflict between the VE testimony and the DOT

1    and concludes the ALJ reasonably relied on the VE's testimony at step five.

2         **C.    Whether the MRFC is Supported by Substantial Evidence**

3         Finally, Plaintiff challenges the ALJ's evaluation of the medical opinion evidence—

4    specifically, the opinions of Drs. Livesay, Swanson, and Popper—and argues the MRFC is not

5    supported by substantial evidence because the ALJ failed to incorporate all of Plaintiff's mental

6    limitations identified by Dr. Popper.[11]  (See ECF No. 17 at 15–19.)

7         1.    Legal Standard

8         The RFC is an assessment of the sustained, work-related physical and mental activities the

9    claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§

10   404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th

11   Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  Thus, it

12   represents the maximum amount of work the claimant is able to perform based on all the relevant

13   evidence in the record.  See id.; see also 20 C.F.R. § 416.945(a)(3) (RFC determination must be

14   "based on all of the relevant medical and other evidence.").  As previously noted, the RFC is not a

15   medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20

16   C.F.R. §§ 404.1527(d)(2), 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the

17   responsibility of the ALJ, not the claimant's physician, to determine residual functional

18   capacity.") (citing 20 C.F.R. § 404.1545).  And where "the record contains conflicting medical

19   evidence, the ALJ is charged with determining credibility and resolving the conflict."  Benton v.

20   Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Batson, 359 F.3d at 1195.

21        In reviewing whether an ALJ committed error in determining the RFC, the relevant

22   inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson, 539 F.3d

23   at 1173–74 (holding the RFC assessment adequately captures restrictions if it is consistent with

24   the concrete limitations in the medical opinions); see also Schneider v. Comm'r, 433 Fed. Appx.

25   507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because

26

27   _____
     [11] The Court notes Plaintiff only challenges the mental limitations set forth in the RFC and not the ALJ's
     determination of her limitations based on physical impairments.  As such, any challenges regarding the physical RFC
28   are deemed waived and are not discussed herein.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at
     929.

medical record did not support finding that migraines would affect claimant's functioning at work).  Accordingly, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010)); see also Chavez v. Colvin (Chavez), 654 Fed. App'x 374, 375 (10th Cir. 2016).  This is because it is within the ALJ's province to synthesize the medical evidence.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007).

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.  See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability

factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. § 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d). Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

### 2.   Relevant Medical Opinions

Dr. Livesay completed a psychological consultation with Plaintiff on September 8, 2018. (AR 433–38.)  He diagnosed Plaintiff with major depressive disorder, moderately severe with anxious distress, anhedonia, and psychotic features.  He opined Plaintiff's problems are treatable and she is likely to show measurable improvement over the course of 12 months if she remains involved in an evidence-based treatment program.  As to the functional assessment, Dr. Livesay opined Plaintiff's ability to perform simple and repetitive tasks is mildly impaired; her ability to perform detailed and complex tasks is moderately impaired; her ability to accept instructions from supervisors is unimpaired; her ability to interact with coworkers and the public is mildly impaired; her ability to perform work activities on a consistent basis without special or additional instructions in moderately impaired; her ability to maintain regular attendance and complete a

normal workday/work week without interruptions from a psychiatric condition is moderately impaired; and her ability to deal with the usual stress encountered in the workplace is moderately impaired.

The ALJ found Dr. Livesay's opinion persuasive. (AR 31.) The ALJ found Dr. Livesay's assessment of Plaintiff's limitations related to complex instructions, persistence, and social interactions were supported by his observations regarding Plaintiff's below average intelligence, concentration deficits, and limited interactions. The ALJ also found Dr. Livesay's assessment was consistent with Plaintiff's recurring reports of depression, decreased activities and daily living, grooming issues, conservative treatment, limited use of medications, and the inconsistencies seen in the record.

Dr. Swanson completed a psychological consultation with Plaintiff on January 2, 2019. (AR 455–59.) He noted Plaintiff appeared motivated to make a case for disability by exaggerating compromise in functioning, adopting an attitude during the assessment that was deemed "ultimately uncooperative," and responding to most questions that she didn't know (e.g., when asked the name of the current US President, Plaintiff responded she did not know; asked the date, she said she did not know; asked the guess the year, she said that she couldn't; asked the name of the city she lives in, she said she did not know; asked how many hands she has, she said she did not know). Dr. Swanson administered the Test of Nonverbal Intelligence-Third Edition ("TONI-3"), but deemed the result invalid because Plaintiff appeared motivated to perform poorly, giving no correct answers and obtaining a raw score of 0, despite indications that she "functions at a considerably higher level." Dr. Swanson concluded Plaintiff does not have any substantial restrictions in daily functioning.

The ALJ determined Dr. Swanson's opinion that Plaintiff does not have severe limitations was not persuasive, on the basis that Dr. Swanson was unable to obtain accurate objective evidence to support his medical opinion because of the "significant questions" about the effort Plaintiff put forth during the examination. (AR 31.) The ALJ also discounted Dr. Swanson's opinion because it was not consistent with Plaintiff's subjective complaints of a persistent depressed mood, which the ALJ determined supported the presence of severe mental

1  impairments.

2      Dr. Popper submitted two check-the-box mental RFC questionnaires for Plaintiff, on

3  February 14, 2019 (AR 460–62), and December 3, 2019 (AR 466–68), respectively.[12]   The form

4  questionnaire contains specific questions and subsets of types of limitations that the medical

5  professional is to opine as to the severity of each subset using a scale of severity from Category I

6  to Category IV.   The first subset of limitation areas pertains to mental abilities, understanding,

7  and memory.   The second subset pertains to mental abilities, sustained concentration, and

8  memory.   The third subset pertains to social interactions.   The fourth subset pertains to

9  adaptation.  According to the form, Category I does not preclude performance of any aspect of the

10  job; Category II precludes performance for five percent of an eight-hour workday (24 minutes);

11  Category III precludes performance for ten percent of an eight-hour workday (48 minutes); and

12  Category IV precludes performance for fifteen percent or more of an eight-hour workday (72

13  minutes).

14      Both of Dr. Popper's questionnaires are virtually identical in their responses.  Dr. Popper

15  indicated he saw Plaintiff weekly since February 5, 2018.  In every area of every subset, Dr.

16  Popper indicated Plaintiff's mental limitations preclude performance for fifteen percent or more

17  of an eight-hour workday (Category IV); the only area not assessed as a Category IV limitation

18  was the area of asking simple questions or requesting assistance, which Dr. Popper opined to be a

19  Category III limitation.   In all spaces provided to explain his findings as to each subset of

20  adaptation, Dr. Popper left the form blank.   Dr. Popper further opined Plaintiff has reduced

21  intellectual functioning because she is illiterate with a language barrier and that that Plaintiff

22  would be absent at least five days per month and would be unable to complete the workday at

23  least five times per month.

24      In addition, Dr. Popper completed a mental disorder questionnaire form dated July 16,

25  2018.   (AR 411–16.)   The report appears to largely consist of a narrative of Plaintiff's

26  environmental history before she emigrated to the United States in 1980, with many symptoms

27  ───────────────

[12] In addition, Dr. Popper submitted a check-the-box mental RFC questionnaire dated November 20, 2019 (AR 463–
28  65); however, this questionnaire appears to apply to a different patient, Mr. Ajohn Xiong, who is also identified by a
different social security number and date of birth than Plaintiff, and the Court shall disregard this record.

reported by Plaintiff.  Dr. Popper diagnosed Plaintiff with major depressive disorder, recurrent episode, severe with psychotic features, chronic PTSD, and generalized anxiety disorder, as well as extreme poverty, inadequate housing, acculturation difficulty, and educational problem based on language barrier and illiteracy problem.

The ALJ found Dr. Popper's medical opinion to be not persuasive.  In discounting Dr. Popper's opinion, the ALJ explained Dr. Popper's treatment notes primarily address Plaintiff's subjective complaints, contain limited mental status examination or other objective facts or findings that support the debilitating limitations contained in Dr. Popper's medical opinion, and Dr. Popper's opined limitations are not consistent with the objective findings seen in Dr. Livesay's examination report, the frequent inconsistencies in Plaintiff's subjective complaints and the objective findings, the limited effort Plaintiff put forth during Dr. Swanson's examination, Plaintiff's treatment noncompliance, and her limited use of medication.  (AR 32.)

3.   Analysis

First, Plaintiff argues the ALJ did not provide sufficient reasons based on substantial evidence in the record to discount Dr. Popper's opinion.  The Court disagrees.

As to the two form questionnaires completed by Dr. Popper, as previously noted, under each of the four categories of mental limitations listed on his questionnaire ((1) mental abilities, understanding, and memory; (2) mental abilities, sustained concentration, and memory; (3) social interaction: and (4) adaptation), Dr. Popper was invited to write into the form the reasons in support of his findings, but instead he left the form blank.  While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, Popa v. Berryhill, 872 F.3d 901, 907 (9th Cir. 2017), the Ninth Circuit has nevertheless held "the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." Ford, 950 F.3d at 1155 (citations omitted).  Thus, an ALJ may discount an unexplained check-the-box form opinion that is unsupported or inconsistent with the treatment records from that medical provider.  See id.; Flowers v. Colvin, No. 3:16-CV-05025 JRC, 2016 WL 4120048, at *3 (W.D. Wash. Aug. 3, 2016).

Furthermore, the ALJ reviewed Dr. Popper's medical treatment notes and found they were

inconsistent with and did not support the level of limitations identified in Dr. Popper's opinions. Dr. Popper's treatment notes do not indicate he administered any tests and the method of his mental examinations is not described or explained.  The majority of Dr. Popper's progress notes indicates the treatment provided was to "normalize patient's feelings with active and reflective listening," often noting Plaintiff afterwards reported "feeling processed coming to weekly session."  Without more, such notes do not support the extreme and debilitating limitations opined by Dr. Popper.  Such incongruity between a treating physician's opinion and the medical records constitutes substantial evidence to support an ALJ's reason for rejecting the physician's opinion of the patient's limitations.  Tommasetti v. Astrue, 533 F.3d 1035, 1041  (9th Cir. 2008); Ford, 950 F.3d at 1155; see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings.").

The ALJ also determined Dr. Popper's opinions were inconsistent with the medical opinion of Dr. Livesay, who conducted mental examinations and reported objective observations that were consistent with his opinion.  Dr. Livesay's contradictory report also constitutes substantial evidence in the record to support the ALJ's discounting of Dr. Popper's opinion.  See Andrews, 53 F.3d at 1041; see also Batson, 359 F.3d at 1195 (inconsistency with the majority of objective medical evidence is an appropriate reason for rejecting a physician's opinion).

Seemingly ignoring these additional reasons for discounting Dr. Popper's opinion, Plaintiff takes issue with the ALJ's statement that Dr. Popper's treatment notes primarily address her subjective complaints, arguing that a psychologist's partial reliance on a claimant's self-reported symptoms is not a valid reason to reject the psychologist's opinion.  (ECF No. 17 at 18 n.11 (citing Buck v. Berryhill, 869 F.3d 1040 (9th Cir. 2017)).)  Plaintiff's reliance on Buck v. Berryhill is misplaced.  In Buck, the Ninth Circuit held a court should not reject a psychiatric opinion that is based *in part* on the patient's self-report, as well as on the clinician's observations, and objective measures such as a clinical interview and mental status evaluation.  Here, by contrast, the ALJ not only rejected Dr. Popper's opinion because it relied *heavily* (rather than in part) upon Plaintiff's reports, but also because the opinion was internally inconsistent as well as

22

1  inconsistent with the other medical evidence, as discussed.  See Christopher A. v. Berryhill, No.

2  C18-5686-MAT (W.D. Wash. Apr. 24, 2019), 2019 WL 1787223, at *6 (distinguishing Buck

3  where the ALJ specifically identified the doctor's reliance on self-reporting with regard to a

4  measurable function (concentration), and was supported by substantial evidence in the record).

5  Furthermore, the ALJ did not entirely ignore Plaintiff's subjective symptoms, but instead

6  considered and credited Plaintiff's reports of persistent depressed mood to reach a determination

7  that Plaintiff has severe mental impairments, which result in moderate functional limitations.

8          The remainder of Plaintiff's argument is unpersuasive.  Plaintiff appears to contend that

9  the ALJ ignored the "mild" and "moderate" impairments opined by Dr. Livesay and that the RFC

10  does not reflect the functional impairments identified by Dr. Livesay which the ALJ found

11  "persuasive."  (ECF No. 17 at 16–17.)  In short, Plaintiff seeks to parse out the paragraph B

12  criteria functional areas[13] identified in Dr. Livesay's opinion, arguing the ALJ was required to

13  identify limitations expressly addressing each purported "limitation" appearing in Dr. Livesay's

14  opinion, specifically, regarding Plaintiff's ability to: "perform work activities on a consistent

15  basis without special or additional instructions"; to "maintain regular attendance and complete a

16  normal workday/week without interruptions from a psychiatric condition"; to "deal with the usual

17  stress encountered in the workplace"; and to "manage funds in her own best interest."  Plaintiff

18  cites to no controlling legal authority to support her argument.  In fact, this contention is not

19  supported by Ninth Circuit caselaw.  To the contrary, as noted, "[t]he ALJ's RFC determination

20  need not precisely reflect any particular medical provider's assessment."[14]  Althoff-Gromer, 2019

21

22  [13] The paragraph B criteria evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  To satisfy the paragraph B criteria, a claimant's mental impairments must be deemed to result in an "extreme" limitation as to at least one of the four categories, or a "marked" limitation in at least two of the four categories.  As previously noted, the ALJ determined Plaintiff did not satisfy the paragraph B criteria because her mental impairments all resulted in "moderate" levels of limitation. Notably, Plaintiff has not contested the ALJ's determination at steps two and three that her severe impairments resulted in "moderate" limitations in the paragraph B criteria functional areas.

26  [14] See Langford v. Astrue, No. CIV S–07–0366 EFB, 2008 WL 2073951, at *3 (E.D. Cal. May 14, 2008) (finding limitations under the B and C criteria are used to rate the severity of mental impairments at steps two and three of the sequential evaluation; they are not an RFC assessment and an ALJ need not include them, verbatim, in his ultimate assessment of a claimant's RFC); see also Chavez, 654 Fed. App'x. at 375 (ALJ need not "parrot ... exact descriptions of ... limitations" to reach an RFC determination consistent with the medical record and claimant's limitations); Carver v. Colvin, 600 Fed. App'x 616, 620 (10th Cir. 2015) (finding ALJ "sufficiently captured the

WL 1316710, at *13; Turner, 613 F.3d at 1222–23; Chavez, 654 Fed. App'x. at 375.

Importantly, the Ninth Circuit has emphasized the relevant inquiry into the propriety of the translation of a "moderate" functional area (as in the paragraph B criteria) to a concrete RFC functional limitation is whether the RFC limitations are supported by the properly-weighted medical evidence.  See Stubbs-Danielson, 539 F.3d at 1173–74.  Thus, to evaluate whether the ALJ properly encompassed certain functional area limitations into the RFC determination, the challenged limitations must be evaluated within the context of the *entire* RFC determination and the ALJ's evaluation of the medical and non-medical evidence in each case.  Here, however, Plaintiff does not examine the three areas[15] that she identifies under the paragraph B criteria within the context of the entire RFC determination, even though the limitations set forth in the RFC are generally interrelated.  Indeed, Plaintiff fails to address the fact that the RFC also limits Plaintiff to "work that is uncomplicated enough that it can be learned within 30 days," no work that involves hourly quotas or the use of conveyer belts, "occasional, simple workplace changes," and "occasional interactions with coworkers, supervisors, and the public."  (AR 25.)  The Ninth Circuit has determined limitations to such "simple" work sufficiently addresses "moderate" mental limitations.[16]  See, e.g., Stubbs-Danielson, 539 F.3d at 1174 (discussing how limitations regarding ability to "carry out very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special

---

essence of the Section III functional limitations," despite not repeating limitations as stated in the medical opinions "verbatim," and commenting, "To conclude otherwise would parse the ALJ's language too finely."); Schneider, 433 Fed. App'x. at 509–10 (ALJ reasonably translated diagnosis that claimant "was expected to have significant difficulties in maintaining normal social interactions" due to "stress and anxiety" and adequately addressed all limitations by issuing RFC which limited claimant to "unskilled work with no public contact and minimal social interactions with co-workers," even though it did not expressly include inability to interact with "supervisors").

[15] Plaintiff also refers to her ability to manage funds.  This is not a discrete functional area under the paragraph B criteria.

[16] It is perhaps also worth noting that the regulations define a "moderate degree of mental limitation" to mean that "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair"; whereas, a "marked" impairment means "functioning in this area … is seriously limited"; and an "extreme" impairment means the claimant is "[u]nable to function in this area independently."  20 C.F.R. §§ 404, Subpt. P, Appx. 1, 12.00.F.2.c, 12.00F.2.d (emphasis added); see also, e.g., Sandoval v. Berryhill, CIV 17-0641 JHR, 2018 WL 3429920 (D.N.M. Jul. 16, 2018), at *7 (noting only "marked" impairment prevents any interaction; whereas limitation of "moderate to marked" denotes "abilities in these areas are limited, [but] they are not completely absent.").  Thus, to the extent Plaintiff suggests any accounting for her moderately limiting impairments in the RFC would necessarily result in an ultimate finding of disability, such contention is unsupported in law.

supervision" were all related to the functional area of "concentration, persistence, or pace," and these restrictions were adequately captured by RFC limitation to "simple tasks"); see also Rogers v. Comm'r Soc. Sec. Admin., 490 Fed. App'x. 15, 17–18  (9th Cir. 2012) (RFC assessment that claimant could perform work limited to simple routine tasks performed in unskilled work was consistent with the medical opinion that she was moderately limited in abilities to understand, remember, and carry out detailed instructions and to respond appropriately to changes in the work setting, and adequately captured all of the claimant's limitations); Thomas, 278 F.3d at 953, 955, 958 (if a job is unskilled, the tasks are very simple and may be performed by a claimant with "mild to moderate deficiencies of concentration"); Stubbs-Danielson, 539 F.3d at 1169 (limitation to "simple, routine, repetitive" tasks accommodates medical opinions that a claimant has a "slow pace" and "several moderate limitations in other mental areas."); Sabin v. Astrue, 337 Fed. App'x. 617, 620–21  (9th Cir. 2009) (ALJ  properly  assessed  medical  evidence  when determining—despite moderate difficulties as to concentration, persistence, or pace—the claimant could perform simple tasks on a consistent basis); Vezina v. Barnhart, 70 Fed. App'x 932, 934 (9th Cir. 2003) (ALJ's RFC hypothetical restrictions of "low-stress work with limited contact with peers, supervisors, and the public" sufficiently encompassed medical opinion that claimant needed "to do simple tasks, [and] someone had to organize them for her," because identified jobs all "involve[d] simple, repetitive, relatively unskilled tasks," which would not require self-direction or organization on claimant's part).   In ignoring these other limitations in the RFC, which  may  holistically  address  her  multiple  impairments,  Plaintiff's  argument  takes  the functional areas reflected in Dr. Livesay's opinion out of context and seeks to "parse the ALJ's language too finely."  Carver, 600 Fed. App'x at 620.  As such, her argument fails.

In sum, the Court finds the ALJ provided sufficient reasons supported by substantial evidence in the record to discount Dr. Popper's opinions, and properly synthesized the conflicting medical opinions concerning Plaintiff's functional limitations into the RFC determination based on the entire medical and non-medical record, inclusive of Dr. Livesay's opinion.  Further, this Court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation.  Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); Burch, 400 F.3d

at 679.  "As [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence."  Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017).  Accordingly, the Court will not disturb the ALJ's decision with respect to his evaluation of the medical and non-medical record and RFC determination.

## VI.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.      Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 17) is DENIED; and

2.      The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Zia Vang, and close this case.

IT IS SO ORDERED.

Dated:   **December 16, 2022**

_____
UNITED STATES MAGISTRATE JUDGE